# THORN v. THORN.

---

AUDITOR'S REPORT; EXCEPTIONS; CONSENT REFERENCE; DOMICIL.

1. Where a petition for letters of administration is referred to the auditor to determine the domicil of the deceased, a general exception to his report is sufficient to bring before this court the question of domicil.
2. Where a petition for letters of administration is referred by the court to the auditor to determine the domicil of the deceased, and a further petition, objecting to the jurisdiction of the court on the ground that the domicil of the deceased was not in the District, is also referred to the auditor on motion of the petitioner; and there is nothing to show

that such reference is made by consent,—the auditor's report is not final, but is open to consideration in this court on appeal.

3. Where it appears that a decedent was born in Washington, lived here for twenty years, and then engaged in business in New York, residing in New Jersey and registering as a voter there; that after two years he left New York on account of ill health, and, after a week's stay in Washington, went to Arizona for about six months; that he then returned to Washington, and died here soon after; and that while in Arizona he wrote letters indicating that he considered Washington as his home,—he must be considered to have regained his domicil of origin in the latter place.

No. 1666.   Submitted June 5, 1906.   Decided June 13, 1906.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia sitting as a Probate Court, overruling exception to a report of the auditor.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

In this appeal, which is from a decree of the supreme court of the District of Columbia overruling exceptions to the auditor's report and granting letters of administration to the appellee, we have presented for our determination the question of the domicil, at the time of his death, of one James A. Thorn.

It appears that letters of administration were first issued to Charles E. Thorn, one of the appellants, upon the sworn petition of said Thorn, reciting the death of James A. Thorn, at the city of Washington, District of Columbia, June 16, 1905, then of full age, a citizen of the United States, and a resident of said District; that he left surviving him as his next of kin and heirs at law his mother, the appellee, a sister, and two brothers, all save the petitioner being residents of the said District; that he died intestate, unmarried, and without any adopted child, and that he left no real estate, but left certain personal property, consisting of an interest in the estate of Columbus W. Thorn, valued at about $10,000. · The other next of kin and heirs at law waived service of citation, and requested that letters be issued to the petitioner, and such letters were duly issued to him June 20, 1905. The appellee, Sarah A. Thorn, filed, on

October 9, 1905, a petition setting forth, in substance, the recitals contained in the prior petition of Charles E. Thorn, save as to the value of the interest of James A. Thorn in his father's estate, which she places at about $19,000. She further averred that she was induced by Charles E. Thorn to consent to the petition filed by him (upon which letters were issued June 20, 1905), by reason of his representation that, under the laws of the District of Columbia, the brothers and sister of the decedent were entitled to the estate; that she had relied upon such representations because Charles E. Thorn was a member of the bar of the District of Columbia; and, having learned that she, as the mother of the decedent, was entitled to the estate, and had a primary right of administration, she asked that letters of administration issued to Charles E. Thorn be revoked, and that letters be granted to her. Upon this petition, an order to show cause why the relief prayed should not be granted was issued. Thereupon Charles E. Thorn answered the petition and the rule to show cause, admitting the allegations of the petition, other than those relating to the residence of the decedent, and that he had deceived his mother as to her rights in and to the estate of the decedent. The answer further set out that he had inadvertently stated the residence of his brother to be the District of Columbia in the petition upon which letters were issued to him. In conclusion he asked that, as his mother appeared to be dissatisfied with his acting as administrator, the court should accept his resignation as administrator, protesting, however, against the grant of letters to his mother, upon the ground that the domicil of the decedent was in the State of New Jersey.

His resignation was accepted; and, the cause coming on to be heard on the petition and answer, an order was made referring it to the auditor of the supreme court of the District of Columbia to determine the domicil of the deceased.

These appellants then filed a petition setting forth that they were the brothers and sister of the decedent, and stating that they desired to enter of record their objection to the administration of his estate by the supreme court of the District of Co-

lumbia, for the reason that the court had no jurisdiction of the estate, as the domicil of the decedent at the time of his death was in the town of Westfield, in the State of New Jersey. To this petition Sarah A. Thorn demurred, whereupon the petitioners moved the court to refer their petition to the auditor of the court, so that it might be considered on the reference theretofore made by the court. The petition being considered by the court, an order was made referring it to the auditor and overruling the demurrer filed thereto.

The auditor, upon due notice, proceeded with the reference, and considerable testimony was taken by him. This testimony was returned by the auditor with his report made to the court, and as a part thereof. The finding of the auditor was that the domicil of the decedent at the time of his death was in the District of Columbia. Exceptions were filed by the appellants to the report of the auditor, which, so far as may be necessary, will be hereafter referred to. The cause then came on, and was heard by the court upon the auditor's report, and the exceptions filed thereto, with the result that, after hearing counsel for all of the parties, the exceptions were overruled, and the report of the auditor was ratified and confirmed. By the same decree letters of administration were ordered to be granted to the appellee upon her giving a bond, and on February 23, 1906, letters were duly issued to her.

*Mr. Alexander Wolf* and *Mr. Joseph D. Sullivan* for the appellants.

*Mr. John C. Gittings* and *Mr. J. M. Chamberlin* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

1. Preliminary to determining the merits of the appeal, we are called upon to briefly consider the motion made by the appellee to dismiss the appeal. This motion is based upon the ground that the whole controversy was determined by the audi-

tor of the supreme court of the District upon a consent reference, made with no reservation whatever; and for the further reason that all the exceptions taken by the appellants to the finding of the auditor were too general in character.

We do not think the motion to dismiss is well founded on either ground. The exception to the report of the auditor in his finding that James A. Thorn, at the time of his death, was domiciled in the District of Columbia, is sufficient to bring before us the real question here in issue. Nor do we consider the contention that the decision of the auditor is final is well taken. When the petition of Sarah A. Thorn for her appointment as administrator, and the answer thereto, came on for hearing, the court below referred the matter to the auditor to determine the domicil of the deceased. There is nothing which shows that this reference was made by consent. After that order was made, a petition was filed by these appellants objecting to the administration of the decedent's estate in the District of Columbia; and that petition was, on motion of appellants, referred by the court to the auditor to be considered in connection with the reference already made. There is nothing in this to indicate that the appellants waived any right of appeal from the decision of the auditor. It appears that the auditor, in making his return with his report, and as part thereof, returned the evidence; that exceptions were filed to his report by the appellants, and that these exceptions were overruled and the report of the auditor confirmed by the court, after hearing from counsel for all parties. The reference to the auditor was not, in our opinion, such a consent reference as amounted to a submission of the controversy to arbitration. There was no complete abdication in favor of the auditor, as claimed by appellee. The appeal should be determined on its merits.

2. We have carefully considered the report of the auditor and the evidence upon which the same is based. In the main, we think that the facts warrant his conclusion that the domicil of the decedent at the time of his death was in the District of Columbia. It appears that decedent was born in Washington, and continuously lived there until he arrived at the age of

about twenty years; that in the fall of 1902 he obtained a situation as clerk with a firm of stockbrokers in the city of New York, and remained with that and another firm until the fall of 1904, when ill health compelled him to resign his position. During that period he boarded at the home of his brother, Charles E. Thorn, at the latter's home in Westfield, New Jersey. While there he was registered as a voter and voted in Westfield, and indicated in such ways as a single man would an intention to make Westfield his home,—at least for the time being. Had he died while employed in New York and residing in Westfield, we would have no doubt that his domicil was in the latter place, and that there his estate should be administered. During this period he was an unmarried man, and was neither a freeholder nor householder, but a boarder at the home of his brother, and in a position to change his residence at any time and without any special inconvenience to himself.

Upon giving up his employment in New York city he returned to Washington, where he remained some weeks, when he went to Arizona and remained there until the following spring. His health, meanwhile, had not improved, and after returning to Washington he was advised by his physician to go to Saranac, New York. His mother went there intending to obtain a cottage and to stay with him. During her absence on this errand his health became such that he was moved to a hospital in Washington, where he died on June 16, 1905.

While in Arizona he wrote many letters to his mother and to his friends in the East. These letters indicate that at first he felt that his condition was improving, but not for long. He was homesick all of the time, and his letters expressed a desire to return to Washington. In one letter he wrote: "Homesickness is a mighty bad thing to have, but I will be back in a little while now, mother. * * * Shake hands with F street and everything around Washington for me." In nearly every letter he asked: "How is everything at home?" Finally, in February, his mother sent him a check so that he could come home.

Some letters which he wrote to his friends at and near Westfield indicate a desire on his part to be present at some of the

social events there transpiring, but there is nothing indicating
an intention to return and make Westfield his home. Some of
the witnesses testify that he expressed by letter and otherwise
to them an intention, when he recovered his health, to continue
in business in New York; but there is nothing which satisfies
us that he had any intention of making Westfield his future
home. From a perusal of all of the testimony, including the
decedent's letters, we can arrive at but one conclusion, and that
is that he considered Washington his home, and it was to Wash-
ington that he longed to return. This, it seems to us, is almost
conclusively shown in a letter written by him under date of
February 6, 1905, in which he says: "When I get back to
Washington, think I will fight it out there; don't reckon I will
get beyond walking distance of the dinner bell again. It is
only two months and then I can come home again. How is
everything at home? I sure would like to be there."

We are of the opinion that the evidence shows that he aban-
doned his residence in Westfield when he left there in Novem-
ber, 1904, and that he resumed the domicil of his origin.

It would serve no good purpose to review at greater length
the facts, nor need authorities be cited to sustain our conclusion.
When the facts are determined in a case of this character, there
is no difficulty in applying the correct rule of law thereto.

Finding no error in the decree appealed from, it follows
that it must be affirmed with costs. And it is ordered.

*Affirmed.*